UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

———————————————————————
                                                    )
LAURIE PHILBIN and PAUL PHILBIN,                    )
as parents and legal guardians of S.P.,             )
                                                    )
            Plaintiffs,                             )        Civil Action No.
                                                    )        09-cv-30101-FDS
        v.                                          )
                                                    )
BUREAU OF SPECIAL EDUCATION                         )
APPEALS and LONGMEADOW PUBLIC                       )
SCHOOLS,                                            )
                                                    )
            Defendants.                             )
———————————————————————)


MEMORANDUM AND ORDER ON
CROSS-MOTIONS FOR SUMMARY JUDGMENT

        This is a civil action brought pursuant to the Individuals with Disabilities Education Act

("IDEA"), 20 U.S.C. §§ 1400-1415, concerning an individualized education program ("IEP")

developed by Longmeadow Public Schools for S.P., a disabled child.  Plaintiffs seek review of a

decision of an independent hearing officer ("IHO") of the Massachusetts Board of Special

Education Appeals ("BSEA") dismissing their case.[1]  The IHO dismissed the matter, essentially

for want of prosecution.

        All parties have moved for summary judgment on the question of the propriety of the

decision by the IHO.  Plaintiffs seek to have the decision vacated and remanded in order that their

challenge to the IEP may be set for an evidentiary hearing at the BSEA.  Defendants contend that

_____

[1] The Court will refer to the family collectively as "plaintiffs."

the IHO correctly dismissed the case and ask this Court to affirm the judgment.[2]  For the reasons

set forth below, plaintiffs' motion will be granted and defendants' motions will be denied.

## I.    The Statutory Framework

The IDEA conditions the provision of federal funds to state schools on compliance with

its requirements.  "To receive federal money, a state must provide all handicapped children with a

free appropriate public education."  *Roland M. v. Concord Sch. Comm.*, 910 F.2d 983, 987 (1st

Cir. 1990) (quotation omitted).  "Substantively, the 'free appropriate public education' ordained

by the Act requires participating states to provide, at public expense, instruction and support

services sufficient 'to permit the child to benefit educationally from that instruction.'"  *Id.*

(quoting *Board of Educ. v. Rowley*, 458 U.S. 176, 203 (1982)).

The IEP is the statute's primary safeguard for assuring the provision of free appropriate

public education to handicapped children.  The IEP "compiles information and goals anent a

particular student's educational progress.  It must include statements about the child's current

performance, long-term and short-term instructional targets, and objective criteria for measuring

the student's advance."  *Id.*  Should the parents of a disabled child wish to contest an IEP, the

state is required to convene an impartial hearing.  20 U.S.C. § 1415(f)(1)(A).  In Massachusetts,

these hearings are conducted by the BSEA in accordance with rules it has issued pursuant to

Massachusetts law.  Mass. Gen. L. ch. 71B, § 3; 603 Mass. Code Regs. 28.08(5)(a); *see Roland*

*M.*, 910 F.2d at 988.  The decision of the BSEA is reviewable in either state or federal court, and

the reviewing tribunal has broad discretion to grant such relief it determines is appropriate.  20

---

[2] Both the BSEA and Longmeadow are named as defendants, and both have separately filed motions for summary judgment defending the IHO's decision for essentially the same reasons.

U.S.C. § 1415(i)(2)(A), (i)(2)(C)(iii).

## II.    **Background**

The following facts are undisputed.

S.P. is a disabled child who resides in Longmeadow, Massachusetts.  Pursuant to the mandate of the IDEA, Longmeadow prepared yearly IEPs for S.P. to facilitate the provision of special education services.[3]  Sometime during 2007, concerned that S.P. was not making sufficient progress in communication, daily living activities, or academic skills, plaintiffs elected to contest Longmeadow's compliance with the free appropriate public education requirement of the IDEA.  (AR at 1-7).

On July 27, 2007, plaintiffs filed a hearing request challenging the most recent IEP developed for S.P. by Longmeadow.  (*Id.*).  The IHO scheduled the hearing for August 31, 2007. The parties, however, agreed to a postponement.  (*Id.* at 9, 14).  In May 2008, the parties jointly requested that the case be put on "off calendar" status so that S.P. could undergo a further evaluation in the hopes of facilitating a settlement.  (*Id.* at 64, 66).  The IHO granted the parties' request in an order dated May 19, 2008.  The May 19 order stated that

> off calendar means that all parties agree that (a) the case shall remain open but that new hearing dates will not be scheduled until requested by one of the parties or required by the Hearing Officer; and (b) the time line for issuing a final decision is extended by the number of days the matter is off calendar, plus an additional twenty (20) days to provide time for the matter to be rescheduled for hearing.  A case that is off calendar will be returned to the calendar and assigned specific dates for hearing upon the receipt of a written request from a party.

(*Id.* at 67 (quoting BSEA Hearing Rule IV.A)).  The May 19 order further indicated that after

---

[3] These various IEPs, including the IEP that is the subject of plaintiffs' challenge before the IHO, are not in the administrative record provided to the Court.

three months on "off calendar" status, the parties would be notified by an order to show cause

that the case would be dismissed unless the parties informed the IHO that it was still active.  (*Id.*).

If, in response to the show cause order, the parties indicated that the case was still active, the IHO

would either (1) extend the "off calendar" status for up to three additional months; (2) schedule a

hearing date and require the parties to attend; or (3) dismiss the case without prejudice.  (*Id.*).

Following the language of BSEA Hearing Rule IV.B, the order concluded by stating that "[s]ix

months after a case has been taken off calendar, the [BSEA] will schedule a hearing date and the

parties shall proceed to hearing or the matter may be dismissed with prejudice."  (*Id.*).

On September 3, 2008, approximately three months after the case had been placed on "off

calendar" status, the IHO issued a show cause order.  (*Id.* at 68).  On October 3, the parties

jointly responded, informing the IHO that the case was still active and requesting a final three-

month period "off calendar."  (*Id.* at 69).  That request was granted on October 7, 2008.  The

October 7 order informed the parties that this would be the final period of "off calendar" status.

(*Id.* at 71).  Again quoting Rule IV.A, the order stated:  "[O]ff calendar means that the parties

agree that . . . the case shall remain open but that new hearing dates will not be scheduled until

requested by one of the parties or required by the Hearing Officer."  (*Id.*).  It concluded:  "This is

the second three-month off-calendar Order.  Accordingly, the parties are reminded that three

months from October 3, 2008, the [BSEA] will schedule a hearing date and the parties shall

proceed to hearing or the matter may be dismissed with prejudice."  (*Id.*).

Three months later, on January 5, 2009, the IHO issued an order directing the parties to

advise him as to whether they wanted the case scheduled for a hearing or dismissed.  (*Id.* at 72).

On January 20, 2009, plaintiffs informed the IHO that the case had not been settled and that they

wanted the matter set for a hearing.  (*Id.* at 73).  On February 6, 2009, after a conference call with the parties, the case was restored to the calendar and set for a hearing on May 5, 6, 7, 12, and 13, 2009.  (*Id.* at 78).

On April 24, 2009, plaintiffs' counsel filed a motion to postpone the hearing.  (*Id.* at 96).  Plaintiffs' counsel indicated, among other reasons, that his son was set to return from military service in Iraq sometime between April 24 and 26, and that a postponement was warranted because the attorney had agreed to be present at the return ceremony and would therefore be unable to prepare adequately for the hearing.  (*Id.* at 96-100).  On April 27, the IHO issued an order directing Longmeadow to respond to plaintiffs' request and allowing plaintiffs' counsel to file additional documents in support of his motion.  (*Id.* at 105).  The IHO advised the parties, however, that "in the event I postpone the five May hearing days, I may then immediately issue a 30-day show cause order rather than scheduling new hearing days.  The show cause order may result in dismissal based on the history of this dispute (including the case being off-calendar for six months)."  (*Id.*).  Longmeadow opposed a further postponement, contending that another delay was unwarranted and prejudicial; plaintiffs' counsel supplemented his motion with a brief letter. (*Id.* at 102-03, 106-07).

On April 30, 2009, the IHO issued two orders.  In the first, he allowed the motion to postpone.  (*Id.* at 121). The second order directed the plaintiffs' to show cause why the case should not be dismissed.  (*Id.* at 120).  The IHO invoked BSEA Hearing Rule IV.B, explaining that after a case has been taken "off calendar" for six months, the "BSEA will schedule a hearing date and the parties shall proceed to hearing or the matter may be dismissed with prejudice."  (*Id.* at 122).  Unpersuaded by the plaintiffs' response to the show cause order, on June 2, 2009, the

5

IHO dismissed the case, albeit without prejudice.  (*Id.* at 128-29).

Plaintiffs then filed the present complaint challenging the dismissal.

## III.   <u>Standard of Review</u>

"In a case like this, summary judgment is merely the device for deciding the issue, because the procedure is in substance an appeal from an administrative determination, not a summary judgment."  *North Reading Sch. Comm. v. BSEA*, 480 F. Supp. 2d 479, 481 n.1 (D. Mass. 2007) (citations and quotations omitted).  The Court's task in reviewing the decision of the hearing officer is circumscribed by statute.

> Tracking the Act's two overriding concerns, the trial court's assessment of the IEP must address both procedural guarantees and substantive goals.  The court must ask two questions:  'First, has the State complied with the procedures set forth in the Act?  And second, is the individualized educational program developed through the Act's procedures reasonably calculated to enable the child to receive educational benefits?'

*Roland M.*, 910 F.2d at 990 (quoting *Rowley*, 458 U.S. at 206-07).  Because the IHO dismissed the case without reaching the merits, plaintiffs raise only a procedural challenge before this Court.

In *Rowley*, the Supreme Court explained how the Act's two overriding concerns relate to the standard of review a district court is to employ:  "When the elaborate and highly specific procedural safeguards embodied in § 1415 are contrasted with the general and somewhat imprecise substantive admonitions contained in the Act, we think that the importance Congress attached to these procedural safeguards cannot be gainsaid."  458 U.S. at 205.  Thus, while a reviewing court may not substitute its own judgment for that of the school district on matters of educational policy, it must ensure that the district and state education agency adhere to the procedures embodied in the Act and the relevant regulations and rules.  *See id.* at 205-06.  The

Act "demonstrates the legislative conviction that adequate compliance with the procedures prescribed would in most cases assure much if not all of what Congress wished in the way of substantive content in an IEP." *Id.* at 206.

A reviewing Court's "principal function is one of involved oversight." *Roland M.*, 910 F.2d at 989.  Consistent with the intent of Congress, the Court must give heightened deference to the educational expertise of the school district.  *Mr. I v. Maine Sch. Admin. Dist. No. 55*, 416 F. Supp. 2d 147, 156 (D. Me. 2006).  "But when the issue is more a matter of law, the educational expertise of the agency is not implicated, and less deference is required." *Id.* at 157.

## IV.  <u>Analysis</u>

The parties do not dispute the material facts relevant to this dispute.  This case therefore presents a single legal question:  Whether, after granting a postponement, the BSEA Hearing Rules authorized the IHO to dismiss the case or whether they required the IHO to schedule a new hearing date.  The Court concludes that the rules did not authorize the IHO to dismiss the case once he granted a postponement.  Rather, because the IHO allowed plaintiffs' motion to postpone, he was obligated under Rule III to issue a new hearing date.  If the IHO wished to rely on Rule IV as a basis for dismissal, he was required to deny the postponement and order the parties to attend the hearing as scheduled.  Only if plaintiffs failed or refused to attend the hearing would dismissal under Rule IV have been proper.

In relevant part, Rule III provides:

**RULE III:**  *Postponement /Advancement*

**A.  Postponement**

. . .

7

A postponement shall be granted only for good cause, at the request of a party.  The reasons for granting the postponement must be documented in the administrative file.

1.  At the Request of One Party

When one party seeks a postponement of any date in the hearing process, the party must file a written request with the Hearing Officer who may allow or deny the request. . . .

The written request must contain a reason for the postponement as well as proposed alternate dates. *If the Hearing Officer allows the postponement, the Hearing Officer must also issue a new hearing date.*

(BSEA Hearing Rule III.A.1) (emphasis added).  Rule IV provides:

**RULE IV:** *Off Calendar*

**A.  Defined**

The parties have the option of taking a hearing off calendar, but only by written agreement of the parties. Off calendar means: all parties agree that (a) the case shall remain open but that new hearing dates will not be scheduled until requested by one of the parties or required by the Hearing Officer; and (b) the timeline for issuing a final decision is extended by the number of days the matter is off calendar, plus an additional twenty (20) calendar days to provide time for the matter to be rescheduled for hearing. A hearing that is off calendar will be returned to the calendar and assigned specific dates for hearing upon the receipt of a written request from any party.

**B.  Periodic Review**

Three months from the date on which the parties agreed to have the case taken off calendar, the parties will be notified via an Order to Show Cause that the case will be dismissed without prejudice unless the BSEA is informed that the case is still active.

If in response to the Order to Show Cause the parties indicate that the case is still active, yet they wish to have the case remain off

> calendar, the Hearing Officer may either: 1) extend the off calendar status for a period of time not to exceed three months; 2) schedule a hearing date and require the parties to go forward; or 3) dismiss the matter without prejudice. Six months after a case has been taken off calendar, the BSEA will schedule a hearing date and the parties shall proceed to hearing or the matter may be dismissed with prejudice.

(BSEA Hearing Rule IV).

In his June 2, 2009 order, the IHO concluded that "when, as in the instant dispute, hearing dates have been set after six months 'off calendar,'" Rule IV.B "does not contemplate the possibility of further postponement."  (AR at 129).  Accordingly, the IHO concluded that the case should be dismissed.

Plaintiffs contend that the IHO misread the rules.  Plaintiffs read Rule IV.B as authorizing dismissal only when a case is both (1) "off calendar" for more than six months and (2) on "off calendar" status at the time of dismissal.  Plaintiffs contend that their case was no longer on "off calendar" status as of January 20, 2009, when they sent the IHO a written request to schedule a hearing.  At that point, plaintiffs assert, the case was returned to the calendar, and from that point Rule III, not Rule IV, governed any postponement requests.  And under Rule III.A.1, if the IHO grants a postponement at the request of one party, "the Hearing Officer *must also issue a new hearing date*."  (BSEA Rule III.A.1 (emphasis added)).  Plaintiffs contend that the IHO erred by failing to issue a new hearing date even though he allowed the postponement request.

Defendants respond that the IHO properly dismissed the case because the matter was on "off calendar" status for more than one year—from May 19, 2008, until the dismissal on June 2, 2009.  According to defendants, dismissal was therefore permitted under Rule IV.B because the case was on "off calendar" status at the time of the June 2 order.  Indeed, in defendants' view, the

IHO allowed the case to remain on "off calendar" status for more than one year, well more than

the six-month maximum permitted under the Rules.  Thus, defendants contend that if the IHO

erred at all, the error actually inured to the benefit of the plaintiffs.

The parties have thus framed the case as a dispute over the definition of "off calendar,"

and whether the case was, in fact, on "off calendar" status at the time of dismissal.  In the Court's

view, however, that issue is not controlling.  The text of Rule IV.B authorizes dismissal "[s]ix

months after a case *has been taken* off calendar. . . ."  (BSEA Hearing Rule IV.B (emphasis

added)).  The Rule measures six months from the date the case was taken "off calendar," but does

not appear to require that the case actually be on "off calendar" status at the time of dismissal.  It

is therefore immaterial whether the case was on "off calendar" status on June 2, 2009, as the

defendants contend, or whether the case was returned to the calendar on January 19, 2009, as

plaintiffs contend.

That conclusion does not, however, resolve this case.  The Court must still decide whether

the IHO erred in dismissing the case.  The resolution of that issue begins with the fact that the

IHO allowed plaintiffs' motion for a postponement.

Rule III authorizes the IHO to grant a postponement "only for good cause."  (BSEA

Hearing Rule III.A).  In granting the motion for postponement, the IHO did not explicitly state

whether plaintiffs had made the required showing.  But the Court must assume that the IHO

implicitly found good cause, or otherwise Rule III would not authorize him to grant the

postponement.  Having allowed the motion for a postponement under Rule III, the IHO was also

required to comply with the remainder of that Rule, which unequivocally states:  "If the Hearing

Officer allows the postponement, the Hearing Officer *must also issue a new hearing date*."

10

(BSEA Hearing Rule III.A.1 (emphasis added)).  Instead of issuing a new hearing date, the IHO dismissed the case.

If the IHO had denied the motion for a postponement and ordered the parties to appear for the May 2009 hearing, and the plaintiffs had either failed or refused to attend, the IHO would have had the power to dismiss the case.  Rule IV.B states that "[s]ix months after a case has been taken off calendar," the IHO "will schedule a hearing date and the parties shall proceed to hearing or the matter may be dismissed with prejudice."  (BSEA Hearing Rule IV.B).  But the parties did not "proceed to hearing"—instead, the IHO granted a postponement.[4]  Having allowed the motion for a postponement, Rule III then required the IHO to "issue a new hearing date."  (BSEA Hearing Rule III.A.1).  He failed to do so.

In short, Rules III and IV, read together, presented the IHO with only two options: (1) deny the motion for postponement for lack of good cause and proceed with the hearing as scheduled, or (2) allow the motion and schedule a new hearing date.  Instead, the IHO chose a third course, and allowed the motion for a postponement while dismissing the case.  That option is not authorized by the Rules.  Accordingly, the IHO's decision must be vacated and the case remanded for further proceedings.

## V.    Conclusion

For the foregoing reasons, Plaintiff's Motion for Summary Judgment is GRANTED.  The Cross-Motion of Defendant Longmeadow Public Schools for Summary Judgment and the Cross-Motion of Defendant Bureau of Special Education Appeals for Summary Judgment are DENIED.

---

[4] Rule IV does not state, much less imply, that six months after a case has been taken off calendar, the IHO is forever deprived of the power to allow a postponement under Rule III.  The IHO is of course not *required* to allow a postponement request, but surely he is not *forbidden* from doing so.

The judgement of the BSEA is vacated and the case is remanded for further proceedings consistent with this memorandum and order.[5]

**So Ordered.**

/s/ F. Dennis Saylor
F. Dennis Saylor IV
United States District Judge

Dated: January 6, 2010

---

[5] It is therefore unnecessary to consider plaintiff's motion for leave to supplement to administrative record, which is denied as moot.